**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JACK TERRY and EDEN TERRY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0340 |
| | § | |
| SAFECO INSURANCE COMPANY OF | § | |
| AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This is an uninsured-motorist insurance case. It arose from an accident between a car driver, Jack Terry, and an uninsured motorist. Jack Terry and his wife, Eden, were on the interstate when the car in front of theirs had a blowout. The driver lost control and hit the Terrys' vehicle. The Terrys were insured by Safeco Insurance Company of America. The other driver did not have automobile insurance. The Terrys filed a claim under their uninsured motorist (UM) coverage. Safeco accepted the claim in part and denied it in part. Safeco initially disputed liability on the basis that Jack Terry was partially responsible for the accident. It also challenged the reasonableness of the amount the Terrys sought for their medical expenses and for pain and suffering.

The Terrys filed suit, alleging that Safeco had breached the insurance contract, breached its common law duty of good faith and fair dealing, and violated the fair settlement practices and prompt-payment provisions of the Texas Insurance Code. This court severed the plaintiffs' extracontractual claims from their breach of contract claims until the plaintiffs established the UM liability and their resulting damages at trial. At the trial, the jury found that Jack Terry was not at fault for the accident. The jury awarded the Terrys some, but not all, of the damages they requested.

Safeco has asserted that once the verdict is reduced to partial final judgment and it pays the amount the jury awarded under the contract, it will not be liable for the additional damages the Terrys seek. Safeco moves for summary judgment on the Terrys' claims.

Based on the complaint; the motion, response, and reply; the record; and the relevant law, Safeco's motion for summary judgment is denied on the Terrys' claim under § 542.057 of the Texas Insurance Code and granted on the Terrys' claims for violations of other sections of the Texas Insurance Code and their claims for breach of contract and breach of the common law duty of good faith and fair dealing.  The reasons are explained below.  A status conference is scheduled for **March 18, 2013** at 9:00 a.m. in Courtroom 11-B.

## I.     Background

On December 12, 2008, Jack Terry was driving down Interstate 10 with his wife in the passenger seat.  Lasonya Nakia was driving in the lane to the right, slightly in front of the Terrys' vehicle.  Nakia's car had a blowout.  She lost control and crossed into the Terrys' lane.  Nakia's car struck the side of the Terrys' car.  This caused the Terrys' car to drive off the right side of the highway and roll over.

The Terrys were taken by ambulance to Memorial Hermann Hospital.  Jack Terry was treated for cervical, lumbar, right shoulder, and right knee sprains and strains; headaches; and muscle spasms.  He was later confirmed to have a protruding disc at L4-5.  (Docket Entry No. 86, Ex. H). Eden Terry also received medical treatment.  Her injuries included cervical radiculalgia; disc herniation and protrusions at C5-6 and C6-7; cervical, lumbar, and thoracic sprains, strains; hyperflexion/hyperextension; muscle spasms; and headaches.  (*Id.*, Ex. I).

Another motorist, Anthony Rodriguez, witnessed the accident and provided a statement to the police.  The Houston Police Department found Nakia at fault.  She was cited for driving without automobile insurance and for failing to drive in a single lane.  (*Id*., Ex. A).

The Terrys' Safeco policy covered liability, property damage, person injury protection (PIP), and uninsured and underinsured motorist (UM/UIM) coverages.  The PIP coverage was for $2,500 per person; the UM/UIM coverage was $50,000 per person for bodily injuries and $100,000 per accident.  (Docket Entry No. 82, Ex. A-8 at 5).

The Terrys first contacted Safeco on December 15, 2008.  (Docket Entry No. 82, Ex. A-3 at 1).  Safeco representative Letesha Wheeler interviewed Jack Terry on December 17, 2008.[1]  Terry stated that he was in the third of five lanes and that Nakia was "a couple of car lengths" ahead in the fourth of five lanes.  One of her tires blew out and her car "fishtailed."  The front of Nakia's car hit the rear passenger door of the Terrys' car.  (Docket Entry No. 86, Ex. B at 4).  Jack Terry stated that when Nakia's car started to fishtail, he "tried to pull on the brake and move over," but her car came into their lane and hit their car.  (*Id*. at 5).

Safeco sent the Terrys a letter dated December 19, 2008, providing them with an application for PIP benefits and a medical authorization form.  Safeco requested that they return the completed forms with any medical bills from the accident.  (Docket Entry No. 82, Ex. A-3 at 2).  Safeco's records indicate that its representative spoke to Jack Terry by telephone that day.  (*Id*. at 3).

Safeco sent the Terrys a letter dated March 19, 2009, asking for information about the status of their injuries and treatment.  (Docket Entry No. 82, Ex. A-3 at 8).  Sometime later, Safeco was

---

[1]  The Terrys submitted a transcript of the phone conversation between Jack Terry and Letesha Wheeler.  Safeco has not objected to any aspect of this evidence.

informed that the Terrys were represented by counsel.  On April 7, 2009, Safeco sent a letter to the Terrys' attorney, seeking copies of the Terrys' medical bills and records.  The letter also stated: "[i]t looks as though Lasonya Nakia was the tortfeasor in this accident.  I will require a letter from Ms. Nakia or her auto carrier stating that she had no coverage at the time of the accident otherwise I do not see this as a Underinsured Motorist (UM) claim."  Safeco informed the Terrys' counsel that, if the Terrys intended to file a UM claim, they would need to provide certain documents.  Safeco noted that it had not received a completed PIP application or medical authorization forms.  (*Id*. at 5–6).

Safeco's records indicate that it tried to call the Terrys' attorney on May 1, 2009, but he was out of the office.  Safeco sent the attorney letters dated June 16 and July 17, 2009, asking him to contact Safeco and stating that it had not received responses to several previous letters.  Safeco also asked the Terrys to provide information about their injuries and send any medical records and bills from the accident.  (*Id*. at 8–9).  Alison Kendall, the Safeco PIP adjuster assigned to the Terrys' claims, sent their attorney an email on August 31, 2009 seeking an update on the PIP application and supporting documentation.  (*Id*. at 10).  Safeco's records from that date state that it had not received the Terrys' medical records and that Safeco had tried, without success, to speak with their attorney by telephone.  (*Id*. at 11).

Safeco received a letter of representation dated September 2, 2009 from the Terrys' attorney. The letter included applications for PIP benefits, the Texas Peace Officer's crash report, and copies of the Terrys' medical records and bills.  The letter stated that Jack Terry's medical bills were $6,548.50 and Eden Terry's bills were $10,037.75.  It did not mention the Terrys' UM coverage. (Docket Entry No. 82, Ex. A-2).

4

Safeco paid the PIP policy limits on September 30, 2009.  (*Id.*, Ex. A-1).  Safeco also sent the Terrys' attorney a letter stating that those payments "exhausted" the PIP/Medical limits and that additional medical expenses would need to be sent to their health insurance carrier.  (*Id.*, Ex. A-4). The Terrys' attorney responded with a demand letter dated November 20, 2009.  The letter stated that the Terrys' injuries were caused when Nakia's car crashed into theirs and caused it to roll over, and that Nakia was entirely at fault:

> According to the investigating officer, factors which [led] to the collision include a slick tire on Ms. Nakia's vehicle which resulted in a blow-out and Ms. Nakia's failure to drive in a single lane.  Ms. Nakia received two citations, one for no insurance and the other for failure to drive in a single lane.  My clients were not issued a citation nor were there any allegations of wrongdoing on their part.  Weather was not a factor in the collision.  It was also the investigating officer's opinion that both of my clients suffered possible injuries.

(Docket Entry No. 82, Ex. A-4 at 2–3).  The letter also summarized the Terrys' injuries and medical treatment.  The letter offered to settle Jack Terry's claim for $20,000 and Eden Terry's claim for $35,000.

Safeco declined the Terrys' settlement offer in a December 5, 2009 letter, in part because it found Jack Terry to be partially at fault for the accident:

> Since Mr. Terry admittedly was behind Ms. Nakia and saw the left tire blow, there is no indication that Mr. Terry a 72 year old experienced driver attempted to brake knowing through his experience that at highway speed there was a good chance for the Ford Victoria to go out of control.  There is no evidence that Mr. Terry moved . . . [to] the left lane to avoid the Crown Victoria, and no evidence that Mr. Terry tried to avoid a dangerous situation, but only he drove straight on though, thus putting himself and Mrs. Terry into harms [sic] way.
>
> We believe the failure to avoid this accident in the making puts at least 15% negligence on Mr. Terry.

(Docket Entry No. 82, Ex. A-5).  Safeco disputed some of the medical billings because Medicaid

had previously paid some bills, other bills were for non-treatment services like medical records and

narrative reports, and the Terrys' attorney had failed to attach one of the bills to his demand letter.

Safeco's letter also noted:

> The odd thing is that Mr. Terry a 72 year old man braced behind the
> steering wheel and Mrs. Terry a 69 year old lady who was not braced
> had virtually the same exact injuries per the chiropractor.  The
> chiropractic treatment was the exact same, the time and length of
> treatment was exactly the same (1/2/09 to 3/9/09 and 24 visits).  The
> MRI were need [sic] on each at the same time.

(*Id.*).  Safeco found that reasonable medical expenses were $5,408.92 for Jack Terry and $6,163.62

for Eden Terry.  It offered $6,300 to Jack Terry and $8,165.00 to Eden Terry for their claims.

Safeco's offer was in addition to the $2,500 that it had already paid to both on their PIP claims.

(*Id.*).

The Terrys' counsel responded in a letter dated December 11, 2009.  The letter contested

Safeco's assertion that Jack Terry was partially at fault for the accident:

> We reiterate again that Ms. Nakia received two citations, one for no
> insurance and the other for failure to drive in a single lane.  More
> importantly, the investigating officer will testify that factors which
> led to the collision included a slick tire on Ms. Nakia's vehicle which
> resulted in a blow-out and Ms. Nakia's failure to drive in a single
> lane.  The officer attributed absolutely no fault on Mr. Terry, though
> he had the opportunity to do so.  There is absolutely no evidence
> whatsoever to support your allegation that Mr. Terry could have done
> something to avoid this accident, and any assertion otherwise is
> simply unfounded.

(Docket Entry No. 82-7, Ex. A-6).  The letter also stated that under the Texas Supreme Court's

decision in *Mid-Century v. Kidd*, 997 S.W.2d 265 (Tex. 1999), Safeco was not permitted to offset

its settlement offers with the PIP benefits it had already paid to the Terrys.[2]  The letter offered to settle Jack Terry's claim for $18,000 and Eden Terry's claim for $30,000.  (*Id*.).

Safeco responded with a letter dated December 14, 2009.  The letter offered $6,500 to Jack Terry and $8,500 to Eden Terry.  The letter pointed to a policy section stating that "[n]o one will be entitled to receive duplicate payments for the same elements of loss under this coverage."  (Docket Entry No. 86, Ex. C at 2).  Safeco also stated: "[r]egarding the MRIs, the reports for both Mr. Terry and Mrs. Terry do not show or state any new injury or an injury . . . connected to the auto accident of 12/12/08.  They do however confirm the findings of the lumbar and cervical x-rays that were taken by Memorial Hermann . . . Hospital on 12/18/08 and 12/12/08 respectively and will be able to be proven by an expert witness."  (*Id*.).  In a December 16, 2009 letter, Safeco offered to pay Jack Terry $8,500.00, and Eden Terry $10,500.00.  The Safeco representative stated that "for the purposes of settlement . . . I will drop the liability issue on Jack."  (Docket Entry No. 82, Ex. A-7).

The Terrys sued Safeco on February 4, 2010.  On October 27, 2010, Safeco offered Jack Terry $10,048.50 and Mrs. Terry $13,472.75 to settle their claims.  (Docket Entry No. 86, Ex. C at 1).  The Terrys rejected this offer.

In January 2011, this court severed the Terrys' extracontractual claims from their breach of contract claims.  At the trial on the uninsured motorists liability and the damages, the jury found that Nakia was entirely at fault.  The jury awarded Jack Terry medical expenses of $8,081.87 and physical pain and mental anguish damages of $12,670.60.  It awarded Eden Terry medical expenses of $7,932.63 and $12,670.60 for physical pain and mental anguish.  (Docket Entry 78).

---

[2]  The Terrys appear to have abandoned this position on summary judgment.

7

Safeco moves for summary judgment on the Terrys' claims.  Safeco argues that these claims were premature because it did not have any contractual or extracontractual duty to pay the Terrys before the court entered a final judgment on the jury's verdict.  Safeco also argues that its denial of part of the Terrys' UM claim was based on a *bona fide* dispute over the Terrys' liability and damages.  Finally, Safeco argues that the Terrys have failed to show that Safeco's alleged breach of its duties injured them.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III.    Analysis

### A.    The Breach-of-Contract Claim

Safeco argues that the Terrys' breach-of-contract claim is premature because it had no contractual duty to pay until the uninsured motorist's liability and the Terrys' damages were established at trial.  The Terrys' UM coverage requires Safeco to "pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of . . . bodily injury sustained by an insured and caused by an accident."  (Docket Entry No. 82, Ex. A-8, at 31).  Interpreting the phrase "legally entitled to recover" in a similar provision, the Texas Supreme Court has held that an insurer is under "no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and [uninsured] status of the other motorist."  *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).  The court explained:

> The [UM/UIM] contract is unique because, according to its terms, benefits are conditioned upon the insured's legal entitlement to receive damages from a third party. Unlike many first-party insurance contracts, in which the policy alone dictates coverage, UIM insurance utilizes tort law to determine coverage. Consequently, the insurer's contractual obligation to pay benefits does not arise until liability and damages are determined.

*Id.* To determine the liability of the uninsured motorist and the resulting damages, the insured may obtain a judgment against the tortfeasor. *Id.* Alternatively, the insured "may settle with the tortfeasor . . . and then litigate [UM/UIM] coverage with the insurer. But neither a settlement nor an admission of liability from the tortfeasor establishes [UM/UIM] coverage, because a jury could find that the other motorist was not at fault or award damages that do not exceed the tortfeasor's liability insurance." *Id.*

In this case, there was no judgment establishing Nakia's liability and uninsured status and the Terrys' resulting damages until this court entered partial final judgment. Safeco's contractual duty to pay UM benefits under the policy did not arise until the Terrys obtained that judgment, Safeco cannot have breached the insurance contract. Summary judgment is granted on the Terrys' breach of contract claim. *Cf. Owen v. Employers Mut. Cas. Co.*, 2008 WL 833086, at *2 (N.D. Tex. Mar. 28, 2008) (granting the insurer's motion to dismiss the breach of contract claim because there was "no previous [judicial] determination of [the underinsured motorist's] liability and uninsured/underinsured status in the record"); *Schober v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2089435, at *3 (N.D. Tex. July 18, 2007) ("Fundamentally, the Schobers fail to indicate how, in the absence of [a judgment establishing the underinsured driver's liability and their damages], they were legally entitled to recover UIM benefits from State Farm at the time of State Farm's alleged breach. Consequently, State Farm cannot legally be held to have breached a contractual duty that never arose.").

### B.     The Extracontractual Claims

Safeco also contends that because it intends timely to pay the judgment entered by this court, summary judgment should be granted on the Terrys' extracontractual claims.

### 1.     The Claim for Breach of the Duty of Good Faith and Fair Dealing

Texas law imposes on insurers "a common law duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex. App.—El Paso 2011, no pet.) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995)). "An insurer will be liable if [it] denies a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered." *Id.* "An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Id.* "The issue of the breach of the duty of good faith and fair dealing 'focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct' in handling the claim." *Id.* (citation omitted). "An objective standard is utilized to determine whether a reasonable insurer under similar circumstances would have delayed or denied payment of the claim." *Id.*

Safeco argues that it is entitled to summary judgment on the bad faith claim because its liability on the UM benefits claim could not be "reasonably clear" until the Terrys established Nakia's negligence and their resulting damages in a judicial proceeding. But under Texas law, a UM benefits claim may be "reasonably clear" even before a court judgment establishes that an insured is "legally entitled to recover" those benefits.

In *Hamburger*, 361 F.3d 875 (5th Cir. 2004), the insurer argued that "coverage of [the plaintiff's] UIM claim was not reasonably clear until the jury determined the extent of [the plaintiff's] damages caused by the [underinsured] driver." *Id.* at 880. The insurer "thus contend[ed] that the trial court properly granted summary judgment on [the] extra-contractual claims, because

no bad faith liability could attach for [the insurer's] failure to settle the claim prior to the jury's determination of [the plaintiff's] damages caused by the accident." *Id.* The Fifth Circuit rejected the insurer's argument. The court observed that "[t]here are no Texas cases which have squarely held that liability can never be reasonably clear before there is a court determination of proximately caused damages." *Id.* Concerned about limiting an insured's ability to assert a bad faith claim, the court held that "[a]bsent a more clear indication from Texas courts that liability cannot be reasonably clear . . . until the insured is found in a legal proceeding to be entitled to recover, we will not adopt this interpretation of Texas law." *Id.* at 881.

Safeco argues that the "clear indication from Texas courts" found missing in *Hamburger* came two years later in the Texas Supreme Court's decision in *Brainard*. In *Brainard*, the Texas Supreme Court held that an insurer's contractual duty to pay UIM benefits "does not arise until the underinsured motorist's liability, and the insured's damages, are legally determined." 216 S.W.3d at 818. *Brainard* did not address whether an insured may assert a bad faith claim before obtaining determination of the uninsured motorist's liability and damages. *Hamburger*, decided two years before *Brainard*, anticipated *Brainard*'s holding. Citing pre-*Brainard* cases, the Fifth Circuit recognized that "Texas courts construe the phrase 'legally entitled to recover' in UIM provisions to mean that the insured must establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover UIM benefits." *Hamburger*, 361 F.3d at 880 (alteration and internal quotation marks omitted). *Brainard* does not appear to call into doubt *Hamburger*'s holding.

Safeco contends that several other Texas Supreme Court opinions establish that "[i]n most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." (Docket Entry No. 82 at 15). It cites to *Republic Ins. Co. v. Stoker*, 903

S.W.2d 338, 341 (Tex. 1995), and *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). But *Stoker* stands for the separate proposition that "[a]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."  903 S.W.2d at 341. Because the Terrys established at trial that their claim was covered by their UM policy, *Stoker* does not bar their bad faith claims.  *Moriel* also does not support Safeco's position.  The *Moriel* court did not address whether an insured must prove a breach of contract in order to maintain extracontractual claims.

Safeco argues that, even if the Terrys' bad faith claim does not depend on their breach-of-contract claim, summary judgment is warranted because the evidence shows that it had *bona fide* disputes over the extent of Jack Terry's fault for the accident, the reasonableness and necessity of the Terrys' medical treatment and bills, and the appropriate amount of compensation for the Terrys' pain and suffering.

Safeco's initial offer for payment of the Terrys' medical expenses is almost identical to what the jury found Safeco liable for at trial.  Safeco deducted $150 from Natural Chirocare's bill for the cost of a narrative report that Safeco found not to be medical treatment.  The Terrys point to no evidence showing that Safeco's liability for this $150 part of the bill was clear.  Nor do the Terrys point to evidence showing that Safeco's denial of this $150 was not based on a *bona fide* dispute. Safeco's initial letter also did not offer payment for several other expenses that the jury found Safeco liable for.  These were Jack Terry's bill from Memorial Southwest Hospital, Jack Terry's bill from the Houston Fire Department/EMS, and the Terrys' bills from Lone Star Orthopedics.  The record does not reflect that the Terrys initially requested compensation for, or submitted, the bills or records justifying payment for these services.

13

The Terrys argue that Safeco breached its duty of good faith and fair dealing in taking the initial position that Jack Terry was partially at fault for the accident.  The Terrys point to the police report, witness statement, and telephone statement that Jack Terry gave Safeco.  In the statement, Terry related that he was driving at highway speeds in the lane next to Nakia's car and was only a couple of car lengths behind when the tire blew out.  Safeco does not point to any evidence in its possession when it sent its December 4, 2009 letter that contradicts Terry's statement or that otherwise supports its finding that Jack Terry could have avoided Nakia's car.  Based on the summary judgment evidence, a reasonable trier of fact could find that Safeco should have known that there was no reasonable basis to find Jack Terry "at least 15 percent negligent."

The Terrys also argue that the compensation Safeco offered the Terrys for their pain and suffering was so low as to breach its duty of good faith and fair dealing.  In its December 4, 2009 letter, Safeco offered to pay Jack Terry about $3,500 and Eden Terry about $4,500 for pain and suffering.  In its final offer before the Terrys filed suit, Safeco stated that it would pay the Terrys about $6,000 each for pain and suffering.  At trial, the jury found that Safeco was liable to each of the Terrys for about $12,500 for pain and suffering.  The Terrys do not point to any competent evidence showing that it was reasonably clear that Safeco's offer was inadequate.  The difference between Safeco's offer and the amount the jury awarded is not sufficient to create a fact issue on the Terrys' bad faith claim.  *See Hamburger*, 361 F.3d at 881 (holding that an insurer's finding that $16,039.10 was adequate compensation for pain and suffering was not "bad faith *per se*" and that summary judgment was appropriate even though a jury awarded the insured $50,000 for pain and suffering).  Summary judgment is appropriate on the Terrys' bad faith claims for inadequate compensation for their pain and suffering.

14

Safeco also moves for summary judgment on the ground that the Terrys have not identified or raised a fact issue as to an injury resulting from Safeco's alleged breach of its duty of good faith and fair dealing independent of the injuries resulting from the accident or Safeco's denial of policy benefits.  To recover from an insurer's breach of its duty to act in good faith, a claimant must show that an insurer's actions "produced an independent injury."  *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 214 (Tex. 1988); *see also United Serv. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App.—San Antonio 2002, no pet.) ("An insured is not entitled to recover extra-contractual damages unless the complained of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits.").

The Terrys argue that "Safeco's delays and denials of prompt payment resulted in foreseeable physical, emotion, and financial injuries to Mr. and Mrs. Terry that are separate and distinct from those contractual damages which were considered at the prior trial of this matter." (Docket Entry No. 86 at 12).  But the Terrys do not state what those injuries were.  Nor do they point to competent record evidence showing any independent injuries caused by Safeco's breach of its duty of good faith and fair dealing.  The Terrys state that they were "forced by Safeco to place their claim into litigation [and] to hire and pay their attorneys." (*Id*. at 4).  But the record shows that the Terrys were represented by counsel before they made their UM claim.  And there is no competent summary judgment evidence that the Terrys paid attorneys' fees.

Nor could Safeco's initial position that Jack Terry was 15% liable for the accident have been the reason for their lawsuit.  In a letter dated December 16, 2009, the Safeco representative working with the Terrys stated that "for the purposes of settlement . . . I will drop the liability issue on Jack." (Docket Entry No. 82, Ex. A-7).  Because there is no basis to infer that the Terrys suffered an

independent injury resulting from Safeco's alleged breach of its duty of good faith and fair dealing, summary judgment is granted on this claim.

The Terrys argue that this court should not grant summary judgment because they have not had the opportunity for discovery on their extracontractual claims.  The Terrys contend that they should be allowed discovery on whether Safeco fairly and timely evaluated their insurance claim. Under Federal Rule of Civil Procedure 56(d), a party may move the court to defer consideration of an opposing party's motion for summary judgment or for additional time to obtain affidavits and declarations or to take discovery if the party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to the motion.  FED. R. CIV. P. 56(d).  The party, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts."  *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotation omitted).  "[A] request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  *Id.*

The Terrys have not submitted an affidavit, declaration, or other statement that meets Rule 56(d)'s requirements.  Nor have the Terrys specified facts that they want to learn through discovery or explained how those facts will affect the summary judgment outcome.  The Terrys have failed to submit or point to any evidence showing that they suffered independent injuries as a result of Safeco's alleged breach of its duty of good faith and fair dealing.  There is no basis to conclude that permitting the Terrys additional discovery would correct this omission or change the result.  The Terrys' request that this court delay granting summary judgment so that they may obtain additional discovery is denied.

16

### 2.      The Statutory Prompt-Payment Claims

The Texas prompt-payment statute "provides for additional damages when an insurer wrongfully refuses or delays payment of a claim." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007).  An insurer "who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for 'interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees.'" *Id.* (quoting TEX. INS. CODE § 542.060(a)).  If a suit is filed, the plaintiff is also eligible for attorneys' fees.  TEX. INS. CODE § 542.060(b).  "To recover a statutory penalty under [the prompt-payment statute], an insured must establish: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to comply with one of the requirements of [the statute] with respect to the claim."  *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 678 (Tex. App.—Austin 2003, no pet.); *see also Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 623 (Tex. App.—Fort Worth 2005, no pet.) ("An insurer will not be held liable for violating [the prompt-payment statute] unless it is found liable for the underlying insurance claim.").  The jury verdict and partial judgment satisfy the prompt-payment statute's requirement that the insured by found liable for the underlying claim.

The Terrys allege that Safeco failed to meet the prompt-payment statute's deadlines.  Within 15 days of receiving notice of a claim, an insurer must acknowledge receipt of the claim, begin an investigation, and request from the claimant "all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant."  TEX. INS. CODE § 542.055(a).  An insurer must also inform the claimant within 15 business days after receiving "all items, statements, and forms required by the insurer to secure final proof of loss" whether it accepts or

rejects the a claim.  TEX. INS. CODE § 542.056(a).  If an insurer rejects a claim, it must state the reasons for the rejection.  TEX. INS. CODE § 542.056(c).  If the insurer approves all or part of a claim, an insurer must pay the claim no later than 5 business days after notifying the claimant.  TEX. INS. CODE § 542.057(a).  An insurer may condition payment on "the performance of an act by the claimant."  TEX. INS. CODE § 542.057(b).  Except as otherwise provided, an insurer may not delay paying a claim for more than 60 days after receiving "all items, statements, and forms reasonably requested and required."  TEX. INS. CODE § 542.058.

The record reflects that Safeco timely acknowledged receipt of the Terrys' claim, began its investigation, and requested the relevant records from the Terrys.  The record also reflects that once the Terrys' attorney informed Safeco that they were filing a UM claim and provided Safeco with the records it requested, Safeco sent a letter within 15 business days approving part of the Terrys' claim. Safeco's letter stated the reasons why it was not approving payment of the full amount that the Terrys requested.  But Safeco does not suggest or point to any evidence showing that it paid the Terrys within five days after sending notice that it approved part of the UM claim.

Safeco argues that it timely paid the Terrys for their property damage and for a part of their medical bills under the Terrys' PIP coverage.  These payments are not relevant to whether Safeco timely paid the Terrys' UM claim.  Summary judgment is granted on the Terrys' claims under §§ 542.055, 542.056, and 542.058 and denied on the Terrys' claim under § 542.057.

### 3.     The Statutory Unfair Settlement Practices Claims

Section 542.003(b) of the Texas Insurance Code, also known as the Texas Unfair Settlement Practices Act, prohibits an insurer from: (1) knowingly misrepresenting to a claimant "pertinent facts or policy provisions relating to coverage"; (2) failing "to acknowledge with reasonable promptness pertinent communications relating to a claim arising under" Safeco's policy; (3) failing "to adopt

18

and implement reasonable standards for the prompt investigation of claims"; (4) "not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear"; (5) "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder"; (6) failing "to maintain the information required by Section 542.005"; and (7) committing any other act that "constitutes an unfair claim settlement practice" as determined by the Texas Insurance Commissioner.

The Terrys' claims fail because there is no private right of action under the Unfair Settlement Practices Act.  "[T]he existence of a private cause of action is a jurisdictional requirement," *Siegel Transfer, Inc. v. Carrier Exp., Inc*., 54 F.3d 1125 (3d Cir. 1995) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986)), and a court must examine its jurisdiction even if the parties have not questioned it, *Int'l Marine, L.L.C. v. Delta Towing, L.L.C.*, 704 F.3d 350, 353 n.4 (5th Cir. 2013).  As one court recently held, "the language of the [Insurance] Code, its legislative history, and court interpretations of the Code suggest that only the Texas Department of Insurance can bring a claim under section 542.003."  *Great American Assur. Co. v. Wills*, 2012 WL 3962037, at *2 (W.D. Tex. Sept. 10, 2012); *see also Citibank Tex., N.A. v. Progressive Cas. Ins. Co.*, 2006 WL 3751301, at *8 (N.D. Tex. Dec. 21, 2006) ("As for [the plaintiff's] pleaded claim under section 542.003 of the [Texas] Insurance Code, that provision (formerly Article 21.21–2, § 2(b)) allows enforcement by the State Board of Insurance but does not create a private cause of action."), rev'd on other grounds, 522 F.3d 591 (5th Cir. 2008).  The Unfair Settlement Practices Act refers to enforcement by the Texas Department of Insurance and the State Attorney General.  In contrast, the Prompt Payment Act, TEX. INS. CODE § 542.060, which follows the Unfair Settlement Practices

Act in the Texas Insurance Code, explicitly provides for a private right of action.  The Terrys' §

542.003 claims fail as a matter of law.  Summary judgment is granted on these claims.

The Terrys also allege that Safeco violated § 541.060 of the Texas Insurance Code, which

prohibits certain unfair settlement practices.  "A person who sustains actual damages may bring an

action against another person for those damages caused by the other person engaging in an act or

practice" prohibited under § 541.060.  TEX. INS. CODE § 541.151.  A prevailing plaintiff may recover

actual damages, court costs, and reasonable and necessary attorneys' fees.  TEX. INS. CODE §

541.152(a)(1).  If the trier of fact finds that a defendant knowingly committed an unfair settlement

practice, "the trier of fact may award an amount not to exceed three times the amount of actual

damage."  TEX. INS. CODE § 541.152(c).

The Terrys allege that Safeco violated § 541.060(a) by failing "to attempt in good faith to

effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's

liability has become reasonably clear"; failing "to promptly provide to a policyholder a reasonable

explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's

denial of a claim or offer of a compromise settlement of a claim"; "failing within a reasonable time

to . . . affirm or deny coverage of a claim to a policyholder; or . . . submit a reservation of rights to

a policyholder"; and "refusing to pay a claim without conducting a reasonable investigation with

respect to the claim."  TEX. INS. CODE § 541.060(a)(2), (3), (4), and (7).

Safeco moved for summary judgment on the ground that the Terrys suffered no independent

injury from the alleged § 541.060 violations.  *See South Texas Medical Clinics, P.A. v. CNA*

*Financial Corp.*, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) (holding that a plaintiff must establish

independent actual damages to bring a § 541.060 claim).  The Terrys have not pointed to any

competent evidence showing that they suffered an injury from the alleged § 541.060 violations

20

independent from the allegedly wrongful denial of policy benefits.  In addition, the record does not support an inference that Safeco failed to "affirm or deny coverage" within a reasonable amount of time.  TEX. INS. CODE § 541.060(a)(3).  The evidence shows that Safeco responded to the Terrys' November 20, 2009 letter seeking payment under their UM policy on December 4, 2009.  Safeco's letter partially affirmed coverage for the Terrys' UM claim but disputed the amount.  The Terrys also have not pointed to any competent evidence showing that Safeco refused to pay their claim "without conducting a reasonable investigation."  TEX. INS. CODE § 541.060(a)(7).  Although the Terrys contend that Safeco improperly denied portions of their UM claim, their summary judgment response does not address whether the denial was the result of an inadequate investigation, and the Terrys do not identify any aspects of Safeco's investigation that may have been inadequate.  Summary judgment is granted on the Terrys' § 541.060 claims.

## IV.    CONCLUSION

For the reasons stated above, Safeco's motion for summary judgment is denied on the Terrys' claim under § 542.057 of the Texas Insurance Code and granted on the Terrys' claims for violations of other sections of the Texas Insurance Code claims and its breach-of-contract and breach of the common law duty of good faith and fair dealing claims.  A status conference is set for **March 18, 2013 at 9:00 a.m.**

SIGNED on March 7, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

21