# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JACK TERRY and EDEN TERRY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0340 |
| | § | |
| SAFECO INSURANCE COMPANY OF AMERICA, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This is an uninsured-motorist insurance case. The remaining issue is whether the insurer's offer to settle a claim on terms that the insureds unequivocally rejected triggered the five-day-payment provision under § 542.057 of the Texas Insurance Code. Section 542.057 requires an insurer to pay the insured within five business days after notice that the insurer will pay all or part of the claim. If the insurer conditions payment of all or part of the claim on the insured's performance of an act, the five-day period begins when that act is performed.

After a jury awarded the Terrys damages for their uninsured motorist ("UM") claim, their insurer, Safeco Insurance Company of America, moved for summary judgment on the extracontractual claims that had been abated pending the jury's determination of the third-party's negligence and the Terrys' resulting damages. (Docket Entry No. 80). In a Memorandum and Opinion, the court granted Safeco's summary judgment motion on all claims except the five-day-payment claim. After a hearing, the parties filed a second round of briefing addressing additional aspects of the issue. (Docket Entry No. 90).

Based on the pleadings; the motion, response, and reply; the parties' submissions; and the relevant law, Safeco's motion for summary judgment is granted on the five-day-payment claim. The parties are directed to confer and to file a written statement no later than **September 23, 2013**, identifying any further issues needing resolution and proposing a form of final judgment.

**I.      Background**

The background of this case is set out in a prior Memorandum and Opinion. *See Terry v. Safeco Ins. Co. of Am.*, — F. Supp. 2d —, 2013 WL 873654 (S.D. Tex. Mar. 7, 2013). The facts relating to the remaining issue can be briefly summarized.

The Terrys were involved in a car accident with an uninsured driver on December 12, 2008. In a letter from counsel dated November 20, 2009, the Terrys demanded benefits under their UM coverage. This letter stated that "Mr. Terry [was] willing to settle his claim for $20,000.00 and Ms. Terry [was] willing to settle her claim for $35,000.00." (Docket Entry No. 92, Ex. A-4, at 5). The letter stated that the demands were "for an unconditional release of any further liability related to the incident made the basis of this potential lawsuit" and cautioned that the "offer [would] remain open for a period of ten (10) days from" receipt. (*Id.*). The letter also stated that "all written offers w[ould] be reviewed" with the Terrys but warned that "any written offer which is less than [the] latest written demand [should be] considered rejected in advance for the purposes of calculating pre-judgment interest." (*Id.*).

In a letter dated December 4, 2009, Safeco acknowledged receipt and stated that the "demand to settle Jack Terry's Uninsured Motorist Bodily Injury (UMBI) claim for $20,000 . . . must [be] decline[d and the] demand to settle Mary Eden Terry's UMBI claim for $35,000 must [be]

2

decline[d]." (*Id.*, Ex. A-5, at 1). After asserting that Jack Terry was 15 % at fault for the accident and summarizing the Terrys' medical bills, Safeco's letter stated:

> Considering the negligence on Mr. Terry's part and the PIP offset of $2,500 (previously paid) and the reasonable net medical bills of $5,408.92, my offer to settle [Mr. Terry's] UMBI claim is $6,300.
>
> . . .
>
> Considering the negligence on Mr. Terry's part and the PIP offset of $2,500 (previously paid) and the reasonable net medical bills of $6,163.62, my offer to settle [Mrs. Terry's] UMBI claim and Liability claim is $8,165.

(*Id.*). Safeco "look[ed] forward to getting these two claims settled." (*Id.*).

The Terrys rejected Safeco's offer and sent a "counter-demand" letter on December 11, 2009. (*Id.*, Ex. A-6). That letter stated:

> In an effort to reach an amicable resolution, Mr. Terry is willing to settle his claim for $18,000.00 and Ms. Terry is willing to settle her claim for $30,000. This offer will remain open for a period of ten (10) days from your receipt of this demand. Please note that all written offers will be reviewed with [the Terrys]; however, any written offer which is less than our latest written demand is considered rejected in advance for purposes of calculating pre-judgment interest. In light of the above, we ask that you re-evaluate our clients' claims in good faith. Otherwise, we will be forced to initiate court proceedings, thereby resulting in litigation expenses for all parties.

(*Id.*). Safeco responded with another offer, which the Terrys rejected. The Terrys then filed this lawsuit.

In their complaint, the Terrys alleged that Safeco failed to "timely acknowledge, investigate, accept[,] and pay the claim." (Docket No. 1, at 12). That allegation was followed by a string citation to seven subsections of § 542 of the Texas Insurance Code, including § 542.057. The court declined to grant Safeco summary judgment on the § 542.057 claim and directed further briefing.

3

After reconsidering the issue with the benefit of the parties' additional briefs, the court grants Safeco's motion for summary judgment. The reasons are explained below.

## II. Discussion

### A. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). When the moving party has met its Rule 56 burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.     Section 542.057 of the Texas Insurance Code**

Sections 542.051–.062 of the Texas Insurance Code (formerly codified at Article 21.55), the "Prompt Payment of Claims" statute, "imposes requirements on an insurer with respect to responding to claims, accepting or rejecting claims, and promptly paying accepted claims." *Cox Operating, L.L.C. v. St. Paul Surplus Lines Ins. Co.*, No. H-07-2724 (GHM), 2013 WL 4459038, at *2 (Aug. 16, 2013). The statute is intended "to secure payment of valid insurance claims [and to] set out a framework for ensuring that this intent is accomplished in a timely manner." *Id.* at *3. "In order to ensure that insurers promptly respond to and pay covered claims," the statute "establishes certain deadlines and penalties for noncompliance." *Id.*

Under the Code, "[w]ithin 15 days of receiving notice of a claim, an insurer must acknowledge receipt of the claim, begin an investigation and request from the claimant 'all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.'" *See Terry,* 2013 WL 873654, at *10 (quoting TEX. INS. CODE § 542.055(a)). The court previously found that Safeco met this requirement. Section 542.056 requires the insurer to inform the claimant within 15 business days after receiving "all items, statements, and forms required by the insurer to secure final proof of loss" whether it accepts or rejects the claim. *Id.* (citing TEX. INS. CODE § 542.056(a)). If the insurer rejects the claim, it must explain the reasons for the rejection. *Id.* (citing TEX. INS. CODE § 542.056(c)). The court found that Safeco also met these requirements.

The prompt-payment statute differentiates between an insurer's notice of acceptance of a claim and notice that it will pay the claim. Section 542.056, entitled "Notice of Acceptance or Rejection of Claim," provides that:

> (a) [A]n insurer shall notify a claimant in writing of the acceptance or rejection of a claim no later than the 15th business day after the

>date the insurer receives all items, statements, and forms required by
>the insurer to secure final proof of loss.

TEX. INS. CODE § 542.056. Section 542.057, entitled "Payment of Claim," provides:

>(a) Except as otherwise provided by this section, if an insurer notifies a claimant under Section 542.056 that the insurer will pay a claim or part of a claim, the insurer shall pay the claim not later than the fifth business day after the date notice is made.
>
>(b) If payment of the claim or part of the claim is conditioned on the performance of an act by the claimant, the insurer shall pay the claim not later than the fifth business day after the date the act is performed.

TEX. INS. CODE § 542.057; *see Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 625 (E.D. Tex. 2010) ("Section 542.057 of the Texas Insurance Code provides that a claim must be paid within five business days after notice that the claim, or a part of the claim, will be paid.); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App. —Houston [14th Dist.] 2010) (same). The question is whether Safeco's rejected offers to settle the Terrys' claim is a "notice of payment of claim" that triggered § 542.057. Two cases help answer that question.

In *Daugherty v. American Motorists Insurance Company*, the insured appealed a take-nothing judgment denying his claim to the cash value of his stolen car. 974 S.W.2d 796, 796 (Tex. App. —Houston [14th Dist.] 1998). Daugherty had submitted a claim to his insurer for $68,895.42. While Daugherty was out of town, the insurer told Daugherty's bookkeeper that the total payoff would be $62,431.14, about $6,000 less than the claim. *Id.* at 797. The insurer rescinded that offer the next day, before Daugherty learned of the offer, because the police found the car. The insurer then tendered payment for $1,901.50 to cover the car's damage and depreciation. Daugherty rejected the offer. After that rejection, the parties could not agree, and Daugherty sued.

6

Daugherty alleged that the insurer owed $62,431.14, the amount that had been offered, then withdrawn. Daugherty argued that the insurer "effectively notified him it would pay his claim when . . . it informed his bookkeeper it had determined" the car's value. *Id.* Daugherty alleged that the insurer's failure to pay the $62,431.14 within five days violated the prompt-payment statute. *Id.* The insurer responded that the communication to Daugherty about the car's value was an offer to settle that the insurer had rescinded before Daugherty learned of it. The court stated that "[w]hatever can be said of the [$62,431.14] communication, it [did] not appear to be a 'notice of payment of claim'" under the five-day-payment statute. *Id.* at 798.[1] The court also noted that the communication was "more in the nature of an offer than a notification that [the insurer] was going to pay the claim. Were [the court] to hold that an oral offer constitutes notice of payment, negotiations between an insurer and its insured would be severely hampered." The court then held that the oral settlement offer was not a notice of payment of claim that triggered the prompt-payment statute.[2]

Similarly, Safeco did not give the Terrys notice of payment of the claim. Safeco's offer to settle by paying a certain amount did not notify the Terrys that it would pay that amount. The Terrys' initial demand letter had preemptively rejected any payment less than their demand. In the negotiations that followed, the Terrys changed their demands and Safeco changed its offers, which the Terrys then rejected. The Terrys did not treat Safeco's responses to the Terrys' demands as

---

[1] The court invoked § 542.057's predecessor, Texas Insurance Code Article 21.55 § 4, which mirrors the current statutes language: "If an insurer notifies a claimant that the insurer will pay a claim or part of a claim . . . , the insurer shall pay the claim no later than the fifth business day after the notice has been made."

[2] One dissenting panel member would have construed the oral settlement offer as a notice of payment of claim that was due within five days. *See id.* at 800 ("The foregoing evidence clearly indicated the fact that the communication . . . was a 'notification' of intent to pay the claim.")

7

notices of payment, but rather as counteroffers to settle: "We are in receipt and appreciate your correspondence . . . wherein you *offered . . . to settle* Mr. Terry's claim and . . . *to settle* Ms. Terry's claim." (Docket Entry No. 92-3 (emphasis added)). The five-day-payment provision does not require payment of every settlement offer. Nor does the provision require rolling pay-outs every five days even if the insured rejects a settlement offer and demands more, and the insurer then increases its offer. Safeco's settlement offers were not notices of payment of the claim that triggered the five-day-payment provision.

Additionally, the Terrys do not have an actionable claim because the settlement offer implicitly required the Terrys' acceptance before payment became due. *See* TEX. INS. CODE § 542.057(b). In *DeLaGarza v. State Farm Mutual Automobile Insurance Company*, the insurer tendered a settlement offer stating that "[u]pon receipt of notice that your client accepts our offer, we will forward a payment draft to you within five business days." 175 S.W.3d 29 (Tex. App — Dallas 2005). The insured did not accept the settlement offer, and the insurer did not pay. The insured sued and argued that the insurer's offer to settle was an acceptance of that amount of the claim and required payment within five business days. *Id.* at 31. The court disagreed, recognizing that the statute "allows an insurer to notify its insured that it is accepting only part of a claim and also allows payment of part of the claim to be conditioned on the performance of an act by the insured. If payment is conditioned on the insured performing an act, such as signing a release or *agreeing to settle for a lesser amount*, the insurance company is not required to pay the claim until five business days after the act is performed." *Id.* at 32 (emphasis added).

This approach does not require an insurer to pay the insured the amount of a settlement offer after that offer is rejected. Safeco clearly stated that it was making a settlement offer — "[we] look[]

8

forward to getting the[] claims settled" — and the Terrys unequivocally rejected the offer. Even assuming that Safeco's settlement offers could be viewed as a notices of intent to pay part of the claim, the Terrys rejected the offers. The five-day-payment provision was not triggered.

The Terrys argue that acceptance of a settlement offer cannot be a condition triggering the five-day-payment provision because an insurer cannot force an insured to settle for an amount below what they are legally entitled to receive. The Terrys rely on *Republic Underwriters Insurance Company v. Mex-Tex, Incorporated*, 150 S.W.3d 423, 426 (Tex. 2004). In *Republic Underwriters*, the Texas Supreme Court noted that an insurer cannot tender partial payment of undisputed aspects of a claim on the condition that the insured provide a liability release "to which it is not ultimately entitled." *Id*. "Otherwise, an insurer's insistence on a release to which it is not ultimately entitled delays payment, again impairing the [prompt-payment] statute's purpose." *Id.* As the *DeLaGarza* court later observed, "[c]entral to [the] Supreme Court's analysis was the idea that an insurance company could not force an insured to settle for less than he was legally entitled to receive by conditioning prompt payment to a release of the insurer's liability for further payment." *DeLaGarza v. State Farm Mut. Auto. Ins. Co.*, 181 S.W.3d 755, 756 (Tex. App. —Dallas 2005).

*Republic Underwriters* involved Article 21.55 § (3)(f) of the Texas Insurance Code, recodified at § 542.058, which requires payment of claims within a specialized period. *Republic Underwriters* did not consider the payment provision at issue here. Aside from that, in the UM context, the insurer "has the right to withhold payment of UIM benefits until the insured's legal entitlement is established." *Hamburger v. State Farm Mut. Auto. Ins. Co*., 361 F.3d 875, 880 (5th Cir. 2004) (citing *Wellisch v United Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 (Tex. App. —San Antonio 2002, pet. den.)). When the parties were negotiating, the Terrys had not established that they were

9

legally entitled to the full amounts they demanded. Though the jury ultimately returned a verdict higher than Safeco's settlement offer, the Terrys have not provided a basis to hold that the verdict alone retroactively established their legal entitlement to the amounts Safeco offered when those offers were made. To the contrary, "[n]othing in the [prompt-payment statute] precludes an insurer from awaiting a judicial determination of an insured's legal entitlement to [UM] benefits." *Wellisch*, 75 S.W.3d at 57.

In *Wellisch*, an insured attempted to obtain penalties under the prompt-payment statute when the insurer held out on settling or paying claims until the uninsured motorist's liability was established. The court noted that the prompt-payment statute "is premised on the presumption that carriers have the right to dispute claims. It merely requires that they do so promptly. Further, nothing in [the prompt-payment statute] precludes an insurer from awaiting a judicial determination of an insured's 'legal entitlement' to [UM] benefits. It merely requires that the insurer notify the insured of its reasons for delaying the acceptance or rejection of claim." *Wellisch*, 75 S.W.3d at 57 (citations omitted). The insured in *Wellisch* asserted that the jury verdict made the initial denial of payment improper and subject to prompt-payment penalties. That was because, the insured asserted, the statute provides for penalties when the insurer fails to pay a claim within sixty days. The general sixty-day period begins only "at the time of the covered event." *Id.* In the UM context, the "covered event" is not the accident but the "date the trial court entered final judgment following a determination [that the uninsured motorist's] negligence caused the accident and a jury returned" a favorable verdict and damages." *Id.* (citations omitted). Other Texas courts have cited *Wellisch* favorably for these propositions. *See, e.g.*, *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) ("Generally, establishment of an insured's legal entitlement requires a

settlement with the tortfeasor or a judicial determination following trial on the issue of the tortfeasor's liability." (quotation omitted)). As this court previously held, the parties had a good-faith dispute over legal entitlement and damages. *See Terry*, 2013 WL 873654, at * 8. *Republic Underwriters* does not make Safeco's offer to settle a notice of payment or require Safeco to pay in advance of proof of legal entitlement to payment.

To summarize, the court does not consider Safeco's settlement offers as a partial acceptance of claim under the prompt-payment statute. Safeco rejected the Terrys' demand before offering settlement, and the settlement offers "stated the reasons why [Safeco] was not approving payment of the full amount." *Terry*, 2013 WL 973654, at *11. The fact that Safeco "approved" part of the claim for settlement purposes is not a notice of acceptance for the purpose of the prompt-payment statute.

Safeco is not liable under § 542.057 of the Texas Insurance Code, as a matter of law.

## III. Conclusion

For the reasons stated above, Safeco's motion for summary judgment is granted on the Terrys' claim under § 542.057 of the Texas Insurance Code. The parties are directed to confer and file a written statement identifying any further issues and proposing a form of final judgment no later than **September 23, 2013.**

SIGNED on September 17, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge